IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____ :
                                 :
                                 :
MARGARET PALCKO                  :     CIVIL ACTION
                                 :     NO: 02-2990
                                 :
          Plaintiff,             :
                                 :
     v.                          :
                                 :
                                 :
AIRBORNE EXPRESS, INC.           :
                                 :
          Defendant.             :     JURY TRIAL DEMANDED
_____ :

**OPPOSITION OF DEFENDANT AIRBORNE EXPRESS
TO PLAINTIFF S RENEWED MOTION TO ENTER
DEFAULT JUDGMENT AND MOTION TO COMPEL ARBITRATION**

Defendant Airborne Express ("Airborne") opposes plaintiff s Renewed Motion to Enter Default Judgment and, by way of response, fully incorporates herein its Motion to Dismiss Plaintiff's Complaint, filed on October 2, 2002.  Airborne respectfully requests that the Court deny plaintiff's Renewed Motion and dismiss plaintiff's Complaint on the additional ground that the parties executed a Mutual Agreement to Arbitrate Claims, a copy of which is attached hereto as Exhibit "A".[1]  In the alternative, Airborne requests that the Court enter an Order

---

[1]Defense counsel provided plaintiff's counsel with a copy of the Mutual Agreement to Arbitrate Claims on October 22, 2002, and with a more legible copy on October 24, 2002.  Plaintiff is not prepared to concede arbitration, which counsel confirmed by telephone on November 1, 2002.  *See* correspondence from Sharon M. Erwin to David L. DaCosta, dated October 22 and 24, 2002, attached hereto as Exhibit "B".

compelling plaintiff to arbitrate her claims in accordance with the parties' Agreement.

### There Is No Basis for the Entry of a Default or Default Judgment Under the Circumstance of this Case

### Introduction

Plaintiff's Renewed Motion to Enter Default Judgment and her Opposition to Airborne's Motion to Dismiss miss the point and fail to explain why no action was taken in response to the Court's Order of August 16, 2002, putting plaintiff on notice of a service of process issue. Moreover, Airborne stands by its assertion that Dan McTague, a new and marginal employee terminated for poor performance within months of his hiring, was never in charge of the DWP facility. See Affidavit of George DiMarco, attached hereto as Exhibit "C". Consequently, whether McTague was actually given a copy of the Summons and the Complaint and/or a letter advising of the entry of a default is irrelevant.

The fact remains that Airborne's Legal Department never received the summons, the complaint or the letter to McTague stating that a default had been entered. Further, plaintiff admittedly did not serve Airborne with the Motion for Entry of Default Judgment.[2] Plaintiff has not made the compelling showing

---

[2]Failure to provide notice to a defendant of motion for default judgment is ordinarily "fatal" to the motion. See Trio Dying & Finishing Company v. Mimarc Industries, 1995 U.S.Dist. LEXIS 15300 (E.D.Pa. Oct. 13, 1995)(Giles, C.J.), noting that a

required to overcome the presumption against default judgments and in favor of having cases decide on their merits.  Tozer v. Charles A. Krause Milling Company, 189 F.2d 242, 245 (3d Cir. 1951).

### The Clerk's Entry of Judgment in This Case is Void

In the absence of service of process, the entry of default, a clerical function, is void.  Gold Kist v. Laurinburg Oil Company, Inc., 756 F.2d 14, 19 (3d Cir. 1985)("default judgment entered when there has been no proper service of the complaint is, a fortiori, void and should be set aside").  *See also* Maryland State Firemen Association v. Chaves, 166 F.R.D. 353 (D.Md. 1996)(court *sua sponte* vacates clerk's default against non-appearing defendant after determining service was defective); *accord* C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2695 at 131 (3d ed. 1998).  Moreover, the denial of plaintiff's Motion to Enter Default Judgment suggests that the entry of default, a mere ministerial act, has already been rendered void.

Upon notice of the lawsuit on September 24, 2002, Airborne promptly requested and obtained copies of the entire

court's discretion to enter a default judgment is not limitless: "The court must be satisfied that the non-moving party has received notice of the motion and that the judgment and remedies applied for are justified by the pleadings and other information of record.  D.B. v. Bloom, 896 F. Supp. 166, 1995 WL 490481 *3 (D.N.J. Aug. 15, 1995)(citing 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure §§ 2681, 2688) (2d ed. 1983))".

court file, examined the return of service, determined that
McTague no longer worked for the company and confirmed with the
station manager that McTague was never in charge of the DWP
station.[3]

Plaintiff's misapprehension of the purpose of service
of process is apparent by her suggestion that Airborne's motion
to dismiss "is a disingenuous attempt to shift from the defensive
posture of explaining away a default."  The point of service is
to have plaintiffs' claims decided on the merits, not to allow
plaintiffs to put defendants in a defensive posture caused solely
by lack of notice.  As stated by the court in <u>Cintas Corporation
v. Lee's Cleaning Services, Inc.</u>, 549 Pa. 84, 700 A.2d 915 (Pa.
1997), cited in plaintiff's brief, the purpose of the
Pennsylvania Rule allowing service on the "person for the time
being in charge" of a facility is "to satisfy the due process
requirement that a defendant be given adequate notice that
litigation has commenced." <u>Id</u>. at 95, 700 A.2d at 919-20.
Providing notice of a lawsuit to a new, low level employee and
then sending correspondence to that same employee is hardly
calculated to bring home the point that something as serious as a

---

[3]There is no basis for plaintiff's gratuitous accusations of
mendacity and sanctionable conduct.  While Airborne questions
plaintiff's reliance on the statement of a disgruntled low level
former employee fired within months of his hiring that he "was in
charge  of the DWP station, Airborne is not about to accuse
plaintiff or her counsel of mendacity and assumes only that their
reliance is misplaced.

lawsuit is at issue.

While it may well have been reasonable for plaintiff's process server to believe that he had effectuated service on Airborne based on McTague's reported representations that he viewed himself "as in charge", that reliance became less reasonable once Airborne failed to respond to the complaint. It became entirely unreasonable once the Court put plaintiff's counsel on notice of the need to determine McTague's status (at which point he had been terminated) or serve Airborne at its headquarters or in some other viable manner.

Plaintiff argues that service of process is effectuated anytime someone tells a process server that he or she is in charge, regardless of the actual authority of the individual. The Pennsylvania Rule, however, provides that process must be left with "someone temporarily in charge". The purpose is to see that the defendant receives the complaint so that the action can be litigated on the merits. Here that did not happen. Airborne respectfully submits that it was incumbent on plaintiff's counsel to confirm that Airborne knew of the lawsuit in response to the Court's Order. Had any effort been made, McTague's termination and his lack of authority would have become known.

The cases cited by plaintiff in support of default judgment are not relevant to the facts of this case. First and foremost, none of the plaintiffs were on notice from the Court of

a problem or potential problem with service, including a
recommendation as to how to effectuate service.  Consequently,
none of the cases involve an issue as to whether the plaintiffs
were acting in good faith.

Under Pennsylvania law, valid service is not only
necessary to acquire jurisdiction over the defendant and provide
defendant with the notice of the action, but is "a fundamental
step in completing the progression of events by which an action
is commenced." Passalqua v. Passalqua, 56 D.& C.4th 38, 48
(C.C.P. Carbon 2002)(citation omitted)(denying motion to vacate
entry of judgment of non pros where plaintiff failed to effect
proper service in accordance with court's order; "good faith must
be established in tandem with the absence of a course of conduct
attributable to plaintiff evidencing a stalling of the machinery
of justice").  At a minimum, plaintiff's inaction in response to
the Court's Order served to stall the machinery of justice.

In addition, many of the cases relied upon by plaintiff
do not involve decisions from within the Third Circuit or service
under the Pennsylvania Rules of Civil Procedure, and most of the
cases involve defendants who had clearly been served and whose
in-house counsel or adjusters received notice of the suit.  *See
e.g.,* Rogers v. Hartford Life and Accident Company, 167 F.3d 933
(5th Cir. 1999)(process served on one defendant by certified
mail, return receipt requested, and papers were sent to and

6

received by Legal Department; second defendant's agent for
process executed a waiver of service of process by which it
"forewent formal notice of the lawsuit", accepted the complaint,
notified the defendant's Claims Office of the receipt of papers
and notified Senior Claims Examiner that papers would be
forwarded); <u>Gibbs v. Air Canada</u>, 810 F.2d 1529 (11th Cir.
1987)(summons and complaint served on Personnel and
Administration Manager for Southeastern United States who
telephoned in-house counsel in control of defendant's litigation
and claims in the Legal Department, in addition to forwarding
copies through interoffice mail); <u>North Central Illinois
Laborers' District Council v. S.J. Groves & Sons Company, Inc.</u>,
842 F.2d 164 (7th Cir. 1988)(process served on registered agent
and sent to and received by in-house counsel); <u>Insurance Company
of North America v. S/S/ "Hellenic" Challenger"</u>, 88 F.R.D. 545
(S.D.N.Y. 1980)(service of process on claims adjuster at
defendant's office by United States Marshall; adjustor had
previously accepted service of process on at least two occasions
in connection with his ordinary duties of receiving and
investigating new claims against defendant).

        As stated in <u>"Hellanic Challenger"</u>, the sophistication
and experience of the individuals served and/or notified serves
to negate any suspicion that process had been delivered to a
representative "who had infrequent contact" with process and

"whose unfamiliarity with service of process increased the risk
of careless or improper handling".  <u>Id</u>. at 548.  McTague's status
as a new employee and a marginal one at best guaranteed that
careless or improper handling would occur.  The Court gave the
plaintiff the chance to rectify the process problem but plaintiff
made a tactical decision not to do so.  Having made the choice,
plaintiff should not be heard to complain about the consequences.

        Plaintiff cites at length the observation in <u>Goodrich
Amram 2d</u> § 424(2):2 (1991) that defendants should not be able to
avoid service by using a knowing and deliberate tactic of placing
the usual place of business under the control of a minor employee
and then disavowing service.  Airborne, however, did the opposite
by refusing to place a minor employee in control of the DWP
station.  The converse of the observations of the legal
commentator actually apply to this case, i.e, plaintiffs should
not be permitted to avoid decisions on the merits by obtaining
snap defaults by serving new, entry level employees without the
sophistication or experience to put defendants on notice that
litigation has commenced.

        The decision in <u>McClain v. Penn Fruit, Inc.</u>, 361 A.2d
403 (Pa. Super. 1976) is also inapplicable to this case because
the individual averred to have been served by the Sheriff was
admittedly in charge of the facility.  The defendant failed to
provide a factual basis to overcome the presumption under

Pennsylvania law that absent a showing of fraud, a Sheriff's return of service is conclusive as to service of individuals present in Pennsylvania. Id. at 306.

The purported service in this action was not made by a disinterested governmental employee but by a process server acting on behalf of plaintiff and her counsel. While the conclusive effect of a Sheriff's return of service is understandable, no such presumption should attach to a partisan process server and certainly not to the server's allegation as to whether the individual is in charge of the station. Even if such a presumption applies, it is overcome in this instance because McTague was never in charge of the DWP facility. Plaintiff's reliance on Reed v. Loblaws, Inc., 17 D.& C.3d 211 (C.C.P. Erie 1980), is also misplaced because the receptionist served with process had accepted service before, which responsibility had been delegated to her by the company. That is not the case with McTague.

Airborne respectfully requests the Court to deny plaintiff's Renewed Motion and grant Airborne's Motion to Dismiss on the ground that plaintiff never effectuated service of process. Furthermore, while Airborne does not believe it necessary for the Court to reach the issue of vacating the default, the standards for doing so pursuant to Fed.R.Civ.P. 55(c) and for denying the plaintiff's Renewed Motion for Entry of

Default Judgment are met under the circumstances of this action.

## Vacating the Entry of Default
## is Equitable Under the Circumstance of This Case

Pursuant to Fed.R.Civ.P. 55(c), a court may set aside an entry of default for good cause shown.  Entries of default, like default judgments, are disfavored and "all doubts should be resolved in favor of setting aside the default and reaching a decision on the merits." <u>99 Cents Stores v. Dynamic Distributors</u>, 1998 U.S. Dist. LEXIS 604 (E.D.Pa. Jan. 21, 1998)(Shapiro, J.). Less substantial grounds are adequate for setting aside a default than would be required for opening a default judgment.  <u>Feliciano v. Reliant Tooling Company, Ltd.</u>, 691 F.2d 653, 656 (3d Cir. 1982).  As stated in <u>Feliciano</u>, "any of the reasons sufficient to justify the vacation of a default judgment under Rule 60(b) normally will justify relief from a default entry and in various situations a default entry may be set aside for reasons that would not be enough to open a default judgment." <u>Id</u>. (holding that lack of bad faith by defendant, coupled with a facially meritorious defense and lack of prejudice, counsel that the default be opened), *citing* 10 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 2696 at 334 (1973).

Vacating an entry of default rests in the sound discretion of the trial court.  <u>Poulis v. State Farm and Casualty Company</u>, 747 F.2d 863, 868 (3d Cir. 1984).  In exercising its discretion, the court is to consider three factors:  (1) whether

10

the defendant has a meritorious defense; (2) whether the
plaintiff would be prejudiced by vacating the default; and (3)
whether the default resulted from the defendants' culpable
conduct.  Feliciano, *supra,* 691 F.2d at 657; Gold Kist, *supra,*
756 F.2d at 13.

### Airborne's Meritorious Defenses

        To establish the presence of a meritorious defense, a
defendant must come forward with allegations that, if proven at
trial, would provide a complete defense to plaintiff's underlying
claim.  The defendant is not required to establish the merit of
the defense.  United States v. A Single Story Double Wide
Trailer, 727 F. Supp. 149, 151-52 (D.Del. 1989).  While not
exhaustive as to all facts and all meritorious defenses, specific
facts supporting the existence of several meritorious defenses
are set forth in the Affidavit of Robert J. Zech, Jr., attached
hereto as Exhibit "D" [hereinafter "Zech Affidavit"].

        Plaintiff's claim is that she was subjected to a
hostile environment as the result of alleged sexual harassment
and that she was retaliated against for complaining about it in
violation of Title VII and the Pennsylvania Human Relations Act.
A female employee alleging that sexual harassment created an
abusive or hostile working environment must show that (1) she
suffered intentional discrimination because of her sex; (2) the
discrimination was pervasive and regular; (3) the discrimination

11

detrimentally affected the plaintiff; (4) the discrimination
would detrimentally affect a reasonable person in the same
situation; and (5) the existence of respondeat superior
liability. Kunin v. Sears Roebuck and Company, 175 F.3d 289, 293
(3d Cir.), *cert. denied,* 528 U.S. 964 (1999). When the
individuals accused of creating the hostile environment are co-
workers of a plaintiff, and not supervisors, liability exists
only where defendant knew or should of known of the harassment
and failed to take prompt remedial action. Id.

  Plaintiff's allegations of sexual harassment are based
upon statements allegedly made by three identified co-employees
and by an unknown employee sending messages over the company's
internal wireless alpha numeric message system. *See* Complaint,
¶¶ 12-26. Plaintiff also alleges that her car was vandalized.

  As set forth in the Zech Affidavit, the drivers at DWP
are members of Local 107 of the International Brotherhood of
Teamsters, which has a contentious relationship with management.
As a result, cars belonging to members of management, male and
female, have been vandalized, as has the station itself. Members
of Local 107 have also been known to assault members of
management. The messages referred to in plaintiff's complaint
also included highly offensive remarks about male employees,
including male management employees. Zech Affidavit, ¶¶ 4, 8.
While these actions are certainly reprehensible, they are based

12

upon the recipient's status as a member of management and not on the basis of gender.  And, whatever the actor's motivation, Airborne investigates and takes prompt remedial action when it can identify the responsible employee.

In response to plaintiff's complaints, the station manager immediately initiated action through the union as required under the governing collective bargaining agreement; notified the shop steward and the Local's president that harassing remarks and/or rumors would not be tolerated; requested through the union a meeting with the driver identified by plaintiff has making such remarks; and met with that driver, the shop steward, the Local Business Agent and the Local President. The station manager also met with all of the drivers to review the company's policy against sexual harassment and reiterated that harassing remarks or behavior would not be tolerated, that disciplinary action would be taken against anyone who engaged in such conduct, and offered the plaintiff the opportunity to switch to another station or another shift.  Throughout this period, Employee Relations Representatives in the Home Office communicated with plaintiff and with the station manager, making sure that plaintiff's complaint's were addressed.[4]  Zech

---

[4]Airborne denies that plaintiff requested a training program as alleged in her complaint.  Nevertheless, the station manager, in addition to multiple meetings with union representatives, reviewed the sexual harassment policy with all of the drivers.

Affidavit, ¶¶ 5-8. In each instance, Airborne's actions stopped the alleged harassment and it therefore cannot be liable under Title VII or the PHRA as a matter of law. Kunin v. Sears Roebuck and Company, *supra,* 175 F.3d at 294.

Airborne also denies plaintiff's claims concerning the meeting on March 5, 2001. Although the meeting took place, it involved the station manager and several supervisors. Contrary to plaintiff's allegations, plaintiff's complaints of sexual harassment were not discussed at the meeting. The station manager, Michael Matey, admonished all of the supervisors for their failure to discipline drivers and told them that if they were not prepared to buckle down and discipline drivers when appropriate, they might as well just walk out. Plaintiff chose to walk out and then refused to return Matey's telephone calls to her. After about a week had passed, plaintiff collected a bonus check and stated that she quit. At that time the manager submitted the paperwork to the Home Office in connection with plaintiff's voluntary resignation. *See* Zech Affidavit, ¶10.

Based on the above facts, Airborne's meritorious defenses include the existence of a binding arbitration agreement requiring arbitration and not litigation. As to the merits of the hostile environment allegations, plaintiff did not suffer intentional discrimination because of her sex but rather because she was a member of management; the alleged discrimination was

14

not pervasive and regular but sporadic; and Airborne took prompt remedial action in response to plaintiff's allegations.

Airborne also has meritorious defenses to the allegations of unlawful retaliation.  Plaintiff was not singled out during the March 5, 2001 meeting, her allegations of sexual harassment were not discussed at that time, and plaintiff did not suffer a tangible, adverse employment action.  She simply quit. In the absence of a tangible, adverse employment action, there can be no retaliation.  Weston v. Commonwealth of Pennsylvania, 251 F.3d 420, 430-01 (3d Cir. 2001).  Airborne further contends that plaintiff will not be able to establish a casual link between her complaints and the meeting on March 5, 2001.

**Vacating the Default Would Not Prejudice Plaintiff and the Default Did Not Result From Culpable Conduct on Airborne's Part**

Plaintiff does not suggest that she would be prejudiced in any way if the Court denies her Renewed Motion to Enter Default Judgment and/or if the default is vacated.  Prejudice occurs when relief would hinder the plaintiff's ability to pursue her claims through "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the default."  Feliciano, *supra,* 691 F.2d at 657.  Delay in realizing satisfaction on a claim rarely serves to constitute prejudice.  Id.

Plaintiff is in no way prejudiced by the vacating of the default in this action and, given the Court's Order of August

15

15, 2002 denying the motion for entry of default judgement, could not have relied on the entry of default entered by the Clerk of the Court.  Beyond that, plaintiff is not prejudiced as she must go to arbitration in any event.

   To the extent there is culpability, it rests with plaintiff.[5]  A defendant exhibits culpable conduct if it "fails to respond to the complaint willfully, in bad faith, or as part of trial strategy."  CGB Occupational Therapy, Inc. v. RHA/Pennsylvania Nursing Homes, Inc., 2001 U.S. Dist. LEXIS 2749 (E.D. Pa. Mar. 9, 2001)(Newcomer, S.J.); see also, Feliciano, supra, 691 F.2d at 657 (culpability is determined by whether the defendant "acted willfully or in bad faith").  None of these apply to Airborne in this case.  Plaintiff, however, chose to serve a low level supervisor who was not in charge of the facility, and then chose to ignore the Court's Order directing proper service or at least an investigation into McTague's level of authority.  Such an investigation would have established that McTague no longer worked for the company and that he was never in

_____

[5]Even if plaintiff had not been culpable and service of process had occurred, Airborne submits that excusable neglect would exist because of the inexperience of McTague, who was new to the company, and given his position, apparently did not think to confirm with the Home Office that whatever he sent had been received.  Nor should the station manager be faulted for not realizing that correspondence specifically addressed to an entry level supervisor might require follow up with the Home Office. Coincidently, June 4, 2002 is the date that George DiMarco's promotion from Lead Field Services Supervisor to station manager became effective.

charge of the facility.  Airborne could easily have been served
by mail or in some other fashion at that time, removing all doubt
as to jurisdiction.

Airborne also acted quickly upon learning of the
existence of the action on September 24, 2002.  Within six (6)
business days, Airborne requested and obtained copies of the
Court's entire file in the case, reviewed the purported Return of
Service, determined McTague's status as an entry level supervisor
who worked for the company for only several months until he was
terminated for poor performance, filed its Motion to Dismiss,
notifying the Court and plaintiff of the insufficiency of
service, and contacted plaintiff's counsel.  Airborne's prompt
action further illustrates its good faith once notified that a
lawsuit has been commenced against it.

Accordingly, Airborne requests that the Court exercise
its discretion to deny plaintiff's Renewed Motion for Entry of
Default Judgment and, to the extent necessary, vacate the entry
of default entered by the Clerk of the Court.

### Plaintiff's Claims Are Subject to Binding Arbitration and Should be Dismissed

Plaintiff and Airborne Express entered into a Mutual
Agreement to Arbitrate Claims during the hiring process.[6]  The

---

[6]In the scramble to determine what had been filed by
plaintiff with the Court, what actually occurred regarding the
attempted service, and the need to promptly notify the Court and
plaintiff's counsel of the insufficiency of service of process,

17

Agreement is valid and binding, and provides as follows:

> The Company and I mutually consent to the resolution of all claims of controversies ("claims"), whether or not arising out of my employment (or its termination) that the Company may have against me or that I may have against the Company . . .. The claims covered by this Agreement include, but are not limited to, . . . claims for discrimination (including but not limited to, race, sex, sexual orientation, religion, national origin, age, marital status, or medical condition, handicap or disability); . . ..
>
> Except as otherwise provided in this Agreement, both the Company and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action (other than an administrative charge of discrimination to the EEOC, or similar state or local fair employment practices agency) . . , in any way related to any claim covered by this Agreement.

The Agreement also provides that an arbitrator "and not any federal, state or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement . . .." *See* Exhibit "A".

All of the plaintiff's claims are within the scope of the arbitration agreement.  Under such circumstances, an order of

---

the existence of the agreement to arbitrate was not realized until October 18, 2002.  Plaintiff's counsel was promptly notified of the agreement and provided with a copy.  *See* Exhibit "B".

dismissal is appropriate.  <u>Smith v. Creative Resources, Inc.</u>, 1998 U.S.Dist. LEXIS 18545, *10 ( E.D.Pa. Nov. 23, 1998), *citing* <u>Seus v. John Nuveen & Company, Inc.</u>, 146 F.3d 175, 179 (3d Cir. 1998).  Airborne respectfully requests that the Court dismiss the complaint on this additional ground.  In the alternative, Airborne requests that the Court compel plaintiff to proceed to arbitration in accordance with the Mutual Agreement to Arbitrate Claims.

### Conclusion

The disheartening aspect of this litigation to date is that all of the procedural and service issues could have been avoided if plaintiff had simply acted in accordance with the Court's Order of August 15, 2002.  Having failed to do so, plaintiff has also failed to establish a basis for the entry of a default or default judgment.  Airborne requests that the Court dismiss the plaintiff's Complaint and direct plaintiff to proceed to arbitration if she wishes to pursue her claims further.

_____
Sharon M. Erwin
Law Offices
  of Sharon M. Erwin, LLC
3130 W. Penn Street
Philadelphia, PA 19129-1016
(215) 438-8813

Dated: November 1, 2002

19

## CERTIFICATE OF SERVICE

I, Sharon M. Erwin, certify that I am causing a true and correct copy of the foregoing Opposition of Defendant Airborne Express to Plaintiff's Renewed Motion for Entry of Default Judgment to be served by first class mail, postage pre-paid, this 1st day of November, 2002, upon the following:

>           David L. DaCosta, Esquire
>           Joseph J. McAlee, Esquire
>           Sprague & Sprague
>           The Wellington Building
>           135 S. 19th Street, Suite 400
>           Philadelphia, PA 19103
>
>           Attorneys for plaintiff

_____
Sharon M. Erwin

Dated: November 1, 2002

20