```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

|  |  |
|---|---|
| MARGARET PALCKO | CIVIL ACTION <br> NO: 02-2990 |
| Plaintiff, |  |
| v. |  |
| AIRBORNE EXPRESS, INC. |  |
| Defendant. |  |

**RESPONSE OF DEFENDANT AIRBORNE EXPRESS TO
PLAINTIFF'S MOTION TO STRIKE OPPOSITION
TO PLAINTIFF'S RENEWED MOTION TO ENTER DEFAULT JUDGMENT**

Plaintiff's Motion to Strike Airborne Express' Opposition to Plaintiff's Renewed Motion to Enter Default Judgment is based upon an assertion that Airborne somehow waived its right to arbitration and that the Mutual Agreement to Arbitrate Claims is unenforceable.[1]  Neither argument has merit.

**Airborne Did Not Waive Arbitration
Where It Promptly Produced
the Agreement to Arbitrate Claims and Requested Arbitration**

As set forth in Airborne's pending Motion to Dismiss Plaintiff's Complaint, Airborne learned of the existence of

---

[1] Airborne is not opposing plaintiff's Motion for Leave to File Plaintiff's Reply to Opposition of Defendant Airborne Express to Plaintiff's Renewed Motion to Enter Default Judgment, although the Reply merely restates plaintiff's arguments in her Renewed Motion.  To the extent necessary, Airborne asks the Court to consider this Memorandum of Law in reply to Plaintiff's Opposition to Airborne's Motion to Compel Arbitration.

plaintiff's lawsuit on September 24, 2002, at which time its counsel obtained copies of the plaintiff's submissions from the Clerk of the Court's file.  Airborne promptly investigated plaintiff's assertions concerning service and determined that, at best, plaintiff relied upon the assertion that her process server had given a copy of the complaint to a former entry-level supervisor who had been terminated for poor performance after just four months on the job.  Airborne confirmed that the employee, Daniel McTague, had never been left in charge of the local facility and promptly filed a motion to dismiss alerting the Court and plaintiff that service had not been effectuated.  Airborne did so within six (6) business days of learning of the suit.

      Once Airborne filed its Motion to Dismiss, it turned to providing its counsel with background information concerning plaintiff, and located in plaintiff's personnel file the Mutual Agreement to Arbitrate Claims ("the Agreement") signed by plaintiff and by Airborne.  Airborne promptly notified its counsel, who called plaintiff's counsel on October 22, 2002 to notify him of the existence of the Agreement, and faxed the best and only copy Airborne's counsel had of the Agreement, advising that a more legible copy would be provided, which it was two days later.  Contrary to plaintiff's allegations, the Agreement was not one form on a single page with two others.  The three

documents are attached on one side by a perforated line and a fold on the other, and are folded over one and other so that they can be provided to applicants as a single packet.[2]

Plaintiff argues that the above facts support waiver of the agreement to arbitrate because Airborne did not raise the arbitration agreement as part of a Rule 12(b)(2) motion, but rather as separate motion on November 1, 2002. Underlying plaintiff's argument is the apparent assumption that she effected service of process, a decision that has yet to be made by the Court.[3] And, plaintiff completely ignores the fact that the Court's Order of August 15, 2002 placed her on notice that

---

[2] The copy of the Arbitration Agreement attached to Airborne's Opposition is the more legible copy provided to plaintiff's counsel on October 24, 2002. Nothing was "blanked out". Rather, it reflects the Agreement with the fold overs open. The copy originally sent to plaintiff's counsel was a photocopy sent to defense counsel from Airborne's Seattle headquarters; it was provided to plaintiff's counsel in that form in the interest of time. The cover letter from defense counsel on October 22, 2002 stated, "It is legible, but I have requested a better copy and will send it to you as soon as I receive it." *See* Exhibit "B" to Plaintiff's Opposition to Defendant Airborne Express' Motion to Compel Arbitration.

[3] Plaintiff's interpretation of Pennsylvania law concerning service ignores Airborne's right to due process, i.e., notice and an opportunity to be heard, a right expressly recognized by the Pennsylvania Supreme Court in Cintas Corporation v. Lee's Cleaning Services, Inc., 549 Pa. 84, 919-920 (Pa. 1997), a case relied upon by plaintiff. The purpose of Pa. R.Civ.P. 424(2) "is to satisfy the due process requirement that a defendant be given adequate notice that litigation has commenced." Id. That did not occur in this case. Further, Airborne's Motion to Dismiss for improper service put plaintiff on notice that Airborne was prepared to defend if the Court did not grant its motion and the appropriate time to move to open the default would have been at that time. If Airborne's still pending motion is granted, the entry of default will be confirmed as moot, although Airborne respectfully submits that it became moot upon the denial of plaintiff's Motion to Enter Default Judgment.

something more was required in the way of service.

Plaintiff fails to provide any legal authority for the argument that parties seeking to enforce an arbitration agreement must raise it in a Fed.R.Civ.P. 12(b)(2) motion or waive it. There is no such requirement, which even a cursory view of the cases cited by plaintiff would confirm. In fact, the case upon which plaintiff relies for the proposition that the existence of an arbitration agreement motion is "more properly brought under Rule 12(b)(2)" is a decision of the Court of Common Pleas of Allegheny County dealing with the Pennsylvania and not the Federal Rules of Civil Procedure. *See e.g.,* Wilk v. Ravin, 46 Pa. D.& C.4th 347 (C.C.P. Allegheny 1991)(discussing alternative means of raising an agreement to arbitrate; no reason waiver should not apply if defendant "chooses to file preliminary objections or an answer and new matter that does *not* refer to an arbitration agreement")(emphasis added); Memorandum of Law in Support of Plaintiff's Motions to Strike Opposition of Airborne Express to Plaintiff's Renewed Motion to Enter Default Judgment at 3.

The lack of any support for plaintiff's argument is illustrated by the decision in Thyssen v. Calypso Shipping Corporation, 310 F.3d 102 (2d Cir. 2002), also cited by plaintiff. The Thyssen court upheld the trial court's rejection of plaintiff's claim that the defendant had waived arbitration,

even though it did not seek to arbitrate for more than eighteen (18) months after suit was filed. The defendant did not file a Rule 12(b)(2) motion, did not raise arbitration in its answer to the complaint and did not move to compel arbitration until after plaintiff had filed a motion for partial summary judgment. Id.

In affirming the district court, the Second Circuit Court of Appeals stated that "the key to waiver is prejudice." Id. at *6. In the absence of prejudice, even the "significant" length of time that passed before the defendant raised the issue was insufficient to constitute a waiver of the right to arbitrate. *See also*, Nationwide Insurance Company v. Patterson, 953 F.2d 44, 45, n.1 (3d Circuit 1991) (dismissal because a dispute is covered by an arbitration agreement "is generally effected under Rule 12(b)(6) covering dismissal for failure to state a claim upon which relief can be granted, *or Rule 56 covering summary judgments if matters beyond the pleadings were considered*") (emphasis added).

Plaintiff's reliance on Blocker v. Providian Life & Health, 2001 U.S.Dist. LEXIS 400 (E.D.Pa. 2001)(Surrick, J.) is misplaced, as the defendant did not seek arbitration for more than thirteen (13) months, during which time the parties engaged in extensive motion practice and discovery, and raised arbitration for the first time in its motion for summary judgment. Based upon the extensive activity in the litigation,

the court found that the defendant had waived arbitration but noted that if the defendant had "filed a motion to compel arbitration within a reasonable time" after service of the plaintiff's complaint, the motion would have been granted. Id. at *3.

It has long been the law in this Circuit that a waiver of the right to compel arbitration will not be lightly inferred. Gavlik Construction Company v. H.F. Campbell Company, 526 F.2d 777, 783 (3d Cir. 1975)(presence or absence of prejudice is determinative of the issue of waiver). *Accord*, Dancu v. Coopers & Lybrand, 778 F.Supp. 832, 834 (E.D.Pa. 1991)(waiver is found "only where the demand for arbitration came long after suit commenced or the parties had engaged in extensive discovery"), *aff'd without op.,* 972 F.2d 1330 (3d Cir. 1992).  In Dancu, the court granted the defendant's motion to compel arbitration, which was filed after the defendant had answered the complaint, the parties had exchanged one set of interrogatories and request for documents, and two depositions had taken place.

There is simply no good faith basis for asserting under the circumstances of this case or the cases cited by plaintiff that Airborne waived the right to arbitrate.  While an analysis of potential prejudice is not called for because of the insufficiency of service and the timely motion to compel arbitration, plaintiff cannot and has not established any

6

prejudice.

In <u>Hoxsworth v. Blinder, Robinson & Company</u>, 980 F.2d 912 (3d Cir. 1992), the court reviewed the factors to consider when an analysis of possible prejudice is warranted. The factors are (1) the timeliness or lack thereof a motion to arbitrate, (2) the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims, (3) whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion, (4) its assent to the district court's pretrial orders, and (5) the extent to which the parties have engaged in discovery. <u>Id</u>. at 926 (right to arbitration waived by actively litigating the case for almost a year before moving to compel arbitration).

Here, Airborne informed its adversary of its intention to seek arbitration less than a month after learning of the lawsuit and requested that plaintiff voluntarily agree to arbitrate before filing its motion. Airborne raised the issue with the Court only after confirming through two letters and a telephone call to plaintiff's counsel that plaintiff would not voluntarily agree to arbitrate. *See* correspondence from Sharon M. Erwin to David L. DaCosta, dated October 22 and 24, 2002, attached to the Opposition of Airborne Express to Plaintiff's Renewed Motion to Enter Default Judgment as Exhibit "B".

The Court has not issued any pretrial orders in this

case, other than the denial of plaintiff's Motion to Enter Default Judgment, and the parties have not engaged in any discovery. Nor have the parties litigated the substantive merits of their claims and defenses.[4] Consequently, plaintiff has not and cannot establish that Airborne prejudiced plaintiff by raising the arbitration agreement on October 22, 2002 rather than on October 2, 2002 in its Motion to Dismiss based upon the insufficiency of process. Rather than an "eleventh hour production" of the arbitration Agreement, Airborne's intent to seek arbitration was made known in a timely and appropriate fashion.

Plaintiff also suggests that she will be prejudiced in arbitration because Airborne will assert in arbitration exactly what it has asserted here, that plaintiff failed to serve the complaint within ninety (90) days of her receipt of her Right to Sue letter. That the same claims and remedies are available in arbitration as in litigation serves only to illustrate that plaintiff is not prejudiced by having her dispute with Airborne

---

[4]Airborne has identified some of its meritorious defenses to plaintiff's allegations in the context of its response to plaintiff's Renewed Motion for Entry of Default Judgment but, contrary to plaintiff's assertion, Airborne is not required to prove those defenses at this time. While only "allegations" are required, Airborne went one step further and provided the defenses in the Affidavit of Robert J. Zech, Jr., based upon records maintained by the company. *See* <u>United States v. A Single Story Double Wide Trailer</u>, 727 F.Supp. 149, 151-152 (D.Del. 1989) and Affidavit of Robert J. Zech, Jr., ¶2, Exhibit "C" to Opposition of Defendant Airborne Express to Plaintiff's Renewed Motion for Entry of Default Judgment and Motion to Compel Arbitration.

decided in arbitration as she agreed to do. Nor can plaintiff be heard to complain that the agreement to arbitrate provides for the same state and federal statutes of limitation as apply in litigation. Lastly, the notification requirements under the Arbitration Agreement apply regardless of when Airborne moved to compel arbitration and existed at the time Airborne learned of the suit, when it moved to dismiss on October 2, 2002 and on November 1, 2002 when it moved to compel arbitration.

Finally, neither Airborne nor its counsel made "a tactical decision" not to raise the existence of the arbitration agreement until Tuesday, October 22, 2002. It was not located until Friday, October 18, 2002.[5]

### The Mutual Agreement to Arbitrate Claims is Enforceable

Notwithstanding plaintiff's arguments to the contrary, it is by no means clear that the Federal Arbitration Act ("FAA"), 9 U.S.C §§ 1 et seq., does not apply to the plaintiff. Section 1 of the FAA exempts from its application "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." The Supreme Court in <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 149 L. Ed. 2d 234, 121 S. Ct. 1302 (2001), held that this clause, rather than

---

[5] Airborne's counsel explained to plaintiff's counsel that Airborne notified her of the existence of the Arbitration Agreement on October 18, 2002 in response to his inquiry after receiving the Agreement.

9

exempting all employment contracts from the application of the FAA, exempts only contracts of employment of "transportation workers." The Court applied the canon of statutory construction known as "eiusdem generis" to the phrase "any other class of workers engaged in foreign or interstate commerce" to conclude that the phrase meant workers of the same type as seamen and railroad workers; in doing so, the Court followed the method of statutory construction first adopted for this section of the FAA by the Third Circuit in <u>Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers of America</u>, 207 F.2d 450 (3d Cir. 1953):

> We think that the intent of the latter language was, under the rule of ejusdem [sic] generis, to include only those other classes of workers who are likewise engaged directly in commerce, that is, only those other classes of workers who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it.

<u>Id</u>. at 452.

It was not necessary for the Supreme Court in <u>Circuit City</u> to decide more precisely exactly how "closely related" to the actual movement of goods in interstate or foreign commerce a worker must be for his or her employment contract to be covered by the exemption. Some guidance, however, may be gleaned from the Supreme Court's suggestion (following that of the Third Circuit in the <u>Tenney</u> case) of Congress' rationale for the limited exemption afforded by Section 1 of the FAA:

10

> [I]t is a permissible inference that the employment contracts of the classes of workers in § 1 were excluded from the FAA precisely because of Congress' undoubted authority to govern the employment relationships at issue by the enactment of statutes specific to them. By the time the FAA was passed, Congress had already enacted federal legislation providing for the arbitration of disputes between seamen and their employers. When the FAA was adopted, moreover, grievance procedures existed for railroad employees under federal law, and the passage of a more comprehensive statute providing for the mediation and arbitration of railroad labor disputes was imminent. It is reasonable to assume that Congress excluded "seamen" and "railroad employees" from the FAA for the simple reason that it did not wish to unsettle established or developing statutory dispute resolution schemes covering specific workers.

530 U.S. at 120-21, 121 S.Ct. at 1312, 149 L.Ed.2d at 250-51 (citations omitted).[6]

It follows from Congress' rationale for exempting seamen and railroad workers from the FAA that it had already provided specific statutory arbitration mechanisms for them, and that the exemption of Section 1 would apply only to those workers that are subject to such mechanisms under the Shipping Commissioners' Act, the Railway Labor Act, or the Labor-Management Relations Act. Plaintiff was a supervisory employee whose employment relationship was not governed by any of these

---

[6]As stated by the Third Circuit in Tenney: "It thus appears that the draftsmen of the Act were presented with the problem of exempting seamen's contracts. Seamen constitute a class of workers as to whom Congress had long provided machinery for arbitration. In exempting them the draftsmen excluded also railroad employees, another class of workers as to whom special procedures for the adjustment of disputes had previously been provided." 207 F.2d at 452 (footnotes citing Shipping Commissioners' Act and Railway Labor Act omitted).

11

special statutory schemes.  Accordingly, she was not within the class of "transportation workers" to whom the exemption of Section 1 of the FAA applies.[7]

As a practical matter, however, whether the FAA applies to plaintiff or not, her agreement to arbitrate employment disputes with Airborne remains subject to mandatory arbitration because the agreement is enforceable under state law.

Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 131 L. Ed. 2d 985, 115 S. Ct. 1920 (1995).  Plaintiff executed the agreement to arbitrate in Pennsylvania.  The arbitration Agreement states that "To the extent that the Federal Arbitration Act is inapplicable, Washington law pertaining to agreements to arbitrate shall apply."  On the issue of the enforcement of arbitration agreements, the laws of Pennsylvania and Washington do not conflict and the result is the same regardless of which law is applied.

Under Pennsylvania law, "When one party to an agreement seeks to prevent another from proceeding to arbitration, judicial

---

[7] Moreover, in plaintiff's own words, she merely supervised and monitored drivers who picked up and delivered packages and was not herself "actively engaged in the movement of interstate or foreign commerce."  See Circuit City, 207 F.2d at 452 and Affidavit of Margaret Palcko, ¶3, attached as Exhibit "A" to Plaintiff's Opposition to Airborne's Motion to Compel Arbitration.

inquiry is limited to determining (1) whether a valid agreement to arbitrate exists between the parties and, if so, (2) whether the dispute involved is within the scope of the arbitration provision." <u>Smith v. Cumberland Group, Ltd.</u>, 455 Pa. Super. 276, 687 A.2d 1167, 1171 (Pa. Super. 1997)(citations omitted).  "'If a valid arbitration agreement exists between the parties and appellant['s] claim is within the scope of the agreement, the controversy must be submitted to arbitration.'" <u>Goldstein v. Depository Trust Co.</u>, 717 A.2d 1063, 1066 (Pa. Super. 1998)(citation omitted), *appeal denied,* 558 Pa. 609, 717 A.2d 1063 (Pa. 1999).

Similarly, public policy and case law also strongly favor enforcing arbitration agreements under Washington law. Washington's arbitration statute states in part, echoing Section 2 of the Federal Arbitration Act:

> Two or more parties may agree in writing to submit to arbitration, in conformity with the provisions of this chapter, any controversy which may be the subject of an action existing between them at the time of the agreement to submit, *or they may include in a written agreement a provision to settle by arbitration any controversy thereafter arising between them out of or in relation to such agreement. Such agreement shall be valid, enforceable and irrevocable save upon such grounds as exist in law or equity for the revocation of any agreement.*

RCW 7.04.010 (emphasis added).

In determining whether parties have agreed to arbitrate a dispute under Washington law, the balance is weighted in favor

of arbitration.  W. A. Botting Plumbing & Heating Company v. Constructors-Pamco, 47 Wash. App. 681, 684-84, 736 P.2d 1100, 1102 (1987).

> As a rule, a contractual dispute is arbitrable unless the court can say with positive assurance that no interpretation of the arbitration clause could cover the particular dispute.

Stein v. Geonerco, Inc., 105 Wash. App. 41, 45-46, 17 P.3d 1266, 1269 (2001).

Plaintiff does not dispute that she signed the Arbitration Agreement and her claims clearly fall within the scope of the Agreement. Plaintiff's implication that there was fraud or overreaching involved in presenting this Agreement to her as part of the intake process has no basis in fact or law. The Agreement can hardly be deemed fraudulent since it is extremely explicit about the kind of disputes that the parties agree to submit to arbitration. It explicitly notifies the signer that claims for discrimination will be submitted to arbitration under the agreement and that she gives up her right to a jury trial by signing the agreement. *See* Flightways Corp. v. Keystone Helicopter Corp., 459 Pa. 660, 663, 331 A.2d 184, 185 (1975) (broad, explicit arbitration provision "cannot be circumvented by an allegation that the contract was void ab initio because of fraud in the inducement or mutual mistake"). There is nothing in the format of the Agreement that would prevent "an observant person from seeing and reading the

arbitration provision." Smith v. Creative Resources, Inc., 1998 U.S.Dist. LEXIS 18545 (Nov. 23, 1998 E.D.Pa. 1998).

It has long been established that individual employment agreements providing for the arbitration of discrimination claims are not contrary to public policy. *See* Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 114 L. Ed. 2d 26, 111 S. Ct. 1647 (1991). Plaintiff's suggestion that her signing of the Agreement was neither knowing or voluntary is unavailing as the Third Circuit Court of Appeals has resoundingly rejected a heightened "'knowing and voluntary' standard" under Pennsylvania law for arbitration agreements to be enforceable. Seus v. John Nuveen & Company, 146 F.3d 175, 183-184 (3d Cir. 1998)(court need not inquire into matters such as "plaintiff's opportunity for deliberation and negotiation, and whether plaintiff was encouraged to consult counsel"), *cert. denied*, 525 U.S. 1139, 143 L.Ed.2d 38, 119 S.Ct. 1028 (1999).

Having signed the Agreement, plaintiff is charged with having read it and cannot, under well established principles of contract law, avoid her obligations by now claiming that she was unaware of what she was signing. Central Reserve Life Insurance Company v. Marello, 2000 U.S. Dist. LEXIS 14405 at *9 (Oct. 4, 2000 E.D.Pa.)(Kelly, J.); *aff'd* 281 F.3d 219 (3d Cir. 2001), *cert. denied,* 154 L.Ed.2d 26, 123 S.Ct. 95, 2002 U.S. LEXIS 5572 (2002)(applying Pennsylvania law); *accord*, Tjart v. Smith Barney,

15

Inc., 107 Wn. App. 885, 897 (Wn. App. 2001)(under Washington law, "ignorance of the contents of a contract expressed in a written instrument does not ordinarily affect the liability of one signs it"), *review denied*, 145 Wn.2d 1027, *cert. denied*, 154 L.Ed.2d 303, 123 S.Ct. 424 (2002). Moreover, all the reasons plaintiff raises for not enforcing the Arbitration Agreement have been routinely rejected in several cases, including Seus, *supra,* 146 F.2d at 183-184, Smith, *supra,* 1998 U.S.Dist. LEXIS at *5-8, and Oxenhandler v. Staffing Concepts, Inc., 2002 U.S. LEXIS 12143, *9 (Mar. 8, 2002 E.D.Pa.)(Kauffman, J.)(rejecting argument that arbitration agreement was unenforceable because "it was foisted on employees on a take-it or leave-it basis").

Finally, the terms of the Agreement are neither one-sided or harsh. Plaintiff and Airborne did not give up any substantive rights in signing the Agreement, only the ability to raise those rights in court rather than in arbitration. The Agreement does not impose any excessive costs on plaintiff and arbitration is by far a less expensive proposition for plaintiff. Airborne therefore requests that the Court dismiss or stay plaintiff's action on the basis of the Arbitration Agreement.

## Conclusion

In responding to plaintiff's various submissions, Airborne relies on the facts and the law, and, unlike plaintiff, will not engage in unsupported accusations of "mendacity",

"sanctionable conduct" and references to an unidentified "bald face lie"   none of which are proper and all of which detract from resolving the disputes on the merits.  Airborne's refusal to respond in kind should not be viewed as condoning plaintiff's approach to litigation, but reflects an effort to address only the substance of plaintiff's arguments and not groundless attacks lacking foundation in the law or in fact.

Plaintiff has not proffered any basis under the applicable law for striking Airborne's Opposition to Plaintiff's Renewed Motion to Enter Default Judgment and Motion to Compel Arbitration or for not enforcing the Mutual Agreement to Arbitrate Claims.  Airborne Express respectfully requests that the Court deny plaintiff's motions and grant Airborne's Motion to Dismiss and Motion to Compel Arbitration.

                                        Respectfully submitted,

_____
Sharon M. Erwin
Law Offices
  of Sharon M. Erwin, LLC
3130 W. Penn Street
Philadelphia, PA 19129-1016
(215) 438-8813

Attorney for defendant
Airborne Express

Dated: December 5, 2002

**CERTIFICATE OF SERVICE**

      I, Sharon M. Erwin, certify that I am causing a true and correct copy of the foregoing Response of Defendant Airborne Express to Plaintiff's Motion to Strike Opposition of Defendant Airborne Express to Plaintiff's Renewed Motion to Enter Default Judgment and Motion to Compel Arbitration to be served by first class mail, postage prepaid, this 5th day of December, 2002, upon the following:

> David L. DaCosta, Esquire
> Joseph J. McAlee, Esquire
> Sprague & Sprague
> The Wellington Building
> 135 S. 19th Street, Suite 400
> Philadelphia, PA 19103
>
> Attorneys for plaintiff

                                      _____
                                      Sharon M. Erwin

Dated: December 5, 2002