IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**MARGARET PALCKO** : CIVIL ACTION
:
    **v.** :
:
**AIRBORNE EXPRESS, INC.** : NO. 02-2990

**M E M O R A N D U M**

O'NEILL, J.                                                                APRIL 23, 2003

      Plaintiff was hired by defendant, Airborne Express, Inc., a package delivery and shipping company, on October 12, 1998, as a Field Services Supervisor at its Philadelphia facility. Upon her hiring, plaintiff signed a contract which included an "Agreement to Arbitrate" clause which required all signatories to submit all disputes to arbitration.

      Plaintiff directly supervised between 30-35 drivers who delivered packages from Airborne's terminal to their ultimate destination in the Philadelphia area and picked up packages from customers in the area and brought them back to Airborne's facility near the Philadelphia International Airport for shipment. She was responsible for monitoring and improving the performance of the drivers under her supervision to ensure timely and efficient delivery of packages.

      As plaintiff tried to improve efficiency and implement other workplace changes, she met resistance from the drivers and their Union, Teamsters Local 107. This alleged resistance included false accusations of plaintiff's sexual misconduct and

spreading rumors about her sex life, physical intimidation and vandalizing her car, lewd and obscene references to women, and comments that women did not belong in the workplace.

At a management meeting on March 5, 2001, plaintiff complained about sexual harassment. Plaintiff contends that defendant did not meaningfully consider her concerns during the meeting and she became frustrated. Plaintiff left the meeting and did not return to her position.

Defendant has not challenged plaintiff's assertion that she timely filed a charge with the Equal Employment Opportunity Commission ("EEOC") on May 31, 2001, alleging that defendant discriminated against on the basis of her sex in violation of Title VII, 42 U.S.C. 2000e, et seq. and the Pennsylvania Human Rights Act ("PHRA"), 43 P.S. § 962(c). The EEOC issued its right to sue letter to plaintiff on February 27, 2002.[1] Plaintiff then filed this action alleging violations of Title VII and the PHRA. Presently before me is defendant's Motion to Compel Arbitration.

## **DISCUSSION**

Defendant seeks to compel arbitration of plaintiff's claims pursuant to the "Agreement to Arbitrate Claims" plaintiff signed upon being hired by defendant as well as the dictates of

---

[1] Plaintiff asserts that she requested the EEOC to provide her with a Dismissal and Notice of Rights on February 12, 2002, on the ground that 180 days had elapsed since she initially filed her Charge of Discrimination and the EEOC had not yet made a finding.

the Federal Arbitration Act ("FAA").  9 U.S.C. § 1, et seq.  If plaintiff's claims fall within the scope of the arbitration agreement, the case must be dismissed.  See Seus v. John Nuveen & Co., Inc., 146 F.3d 175, 179 (3d Cir. 1998)(holding that if all claims involved in a suit are subject to binding arbitration, then the court should dismiss the suit).

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues, should be resolved in favor of arbitration."  Moses H. Cone Hospital v. Mercury Construction, 460 U.S. 1, 24-25 (1983); Battaglia v. McKendry, 233 F.3d 720, 727 (3d Cir. 2000).  A claim is arbitrable if there is an agreement to arbitrate, there has been no waiver of te right to arbitrate, and the claims fall within the scope of the agreement.  Laborers' Int'l Union of North America, AFL-CIO v. Foster Wheeler Corp., 868 F.2d 573, 576 (3d Cir. 1989).  Plaintiff contends that the FAA does not apply to her because she falls within the FAA's exemption for the class of workers closely related to the movement of interstate commerce.[2]

First, as a threshold matter, whether a dispute is subject to a grievance and arbitration procedure is a matter of contract between the parties.  See Trap Rock Indus., Inc. v. Local 825 Int'l Union of Operating Eng'rs, 982 F.2d 884, 888 (3d

---

[2] Plaintiff also asserts that the "Agreement to Arbitrate" is invalid under state law.  However, I need not consider this issue.

Cir. 1992). Additionally, civil rights actions such as the one brought by plaintiff are subject to the enforcement mandate of the FAA, 9 U.S.C. § 2. See, e.g. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 117 (2001)(compelling arbitration of plaintiff's employment discrimination claims); Wright v. Universal Maritime Serv. Corp, 525 U.S. 70 (1998); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 27 (1991)(holding that statutory claims may be the subject of an arbitration agreement unless Congress clearly intended to preclude that result); Seus, 146 F.3d at 182 (stating that "the text of the Civil Rights Act of 1991 evinces a clear Congressional intent to encourage arbitration of federal discrimination claims"); Underwood v. Chef Francisco/Heinz, 200 F. Supp. 2d 475, 478-79(E.D. Pa. 2002)(Title VII claims are subject to FAA).

  The primary question here is whether plaintiff's employment contract, including the arbitration agreement, is within the scope of the FAA. Section 1 expressly excludes "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."

  An expansive reading of § 1 could encompass virtually all contracts of employment given the broad implications of the term "interstate commerce." However, in Circuit City, the Supreme Court narrowed the FAA's exemption for "workers engaged

in foreign or interstate commerce" to include only workers engaged in the movement of goods as transportation workers. 532 U.S. at 112, 117. In so holding, the Supreme Court appeared to endorse the Third Circuit's approach that the FAA applies "only to those classes of workers directly engaged in commerce, that is, only those other classes of workers who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it." Tenney Eng'g, Inc. v. United Elec., Radio & Mach. Workers of Am., Local 437, 207 F.2d 450, 452 (3d Cir. 1953); see also Great W. Mortgage Corp. v. Peacock, 110 F.3d 222, 227 (3d Cir. 1997)(stating that Tenney Eng'g is still good law and that the "only class of workers included within the exception to the FAA's mandatory arbitration provision are those employed directly in the channels of commerce itself").

The question remains whether plaintiff should be excluded from the coverage of the FAA because of the nature of her work. The Third Circuit has never considered the scope of § 1's exemption in a context similar to the instant case.

Defendants rely on the Congressional intent underlying the FAA to contend that plaintiff is not exempt from the FAA's coverage because no special statutory dispute resolution mechanism applies to plaintiff. In Circuit City, the Supreme Court inferred that Congress excluded "seamen" and "railroad

employees" to prevent disrupting existing statutory arbitration schemes already in place for those industries. 530 U.S. at 120-21. However, decisions by other courts indicate that workers besides those covered under other statutory arbitration statutes are also exempted as long as they are engaged in conduct directly involving the actual transportation or movement of goods.

For example, a plaintiff who directly transported goods in interstate commerce falls within the FAA's exemption. See Harden v. Roadway Package Sys., Inc., 249 F.3d 1137, 1140 (9th Cir. 2001)(holding that an individual truck driver who provided courier service to deliver packages throughout the United States was a transportation worker engaged in interstate commerce and exempted from an arbitration agreement). Moreover, the Sixth Circuit has held that a worker, even one who did not directly transport goods, falls into the FAA's exemption because the employee belongs to a class of workers engaged in interstate commerce. See Bacashihua v. United States Postal Serv., 859 F.2d 402, 405 (6th Cir. 1988)(exempting from the FAA a parcel post mail distributor at a Bulk Mail Center who did not directly deliver mail or packages); see also American Postal Workers Union, AFL-CIO v. United States Postal Serv., 823 F.2d 466, 473 (11th Cir. 1987)(determining that postal workers, who are "responsible for dozens, if not hundreds, of items of mail moving

in 'interstate commerce' on a daily basis, fall within the purview of the FAA's exemption).

Meanwhile, courts have excluded from the FAA's exemption employees who, although employed in jobs with close ties to interstate commerce and transportation, were not "actually engaged in the movement of goods."  See Perez v. Globe Airport Security Serv., Inc., 253 F.3d 1280, 1283-84 (11th Cir. 2001)(excluding a pre-departure security agent at an international airport from the FAA's exemption because she merely inspected or guarded goods in interstate commerce prior to their transport but did not actually transport them); Cole v. Burns Int'l Security Serv., 105 F.3d 1465, 1471 (D.C. Cir. 1997)(holding that a security guard at a train station did not fall into FAA's exemption because he did not participate in the actual movement of goods in commerce); Kropfelder v. Snap-On Tools Corp., 859 F. Supp. 952, 958-59 (D. Md. 1994)(excluding a warehouse worker who packaged, unloaded, and loaded products trucked to and from a distributor's warehouse from the FAA's exemption because employee's relationship to interstate commerce was not sufficiently similar to that of seamen or railway workers).

Here, defendant is an interstate shipping company responsible for moving packages and bulk goods in interstate commerce.  According to plaintiff's affidavit, she worked as a

supervisor at defendant's Philadelphia facility, overseeing between 30-35 delivery drivers directly responsible for moving the goods.  She was directly involved in a transportation business engaged in the channels of interstate commerce.  As she oversaw the actual delivery of goods, her role was more akin to that of a truck driver or postal employee than that of a security guard at an airport or a warehouse employee.  Although plaintiff did not personally move the goods in interstate commerce, she monitored and ensured the efficient delivery of those goods.  Because she oversaw the delivery of goods, her job was "so closely related [to the transport of the goods" as to be in practical effect part of [the shipping of the goods]" and she should be considered a transportation worker.  <u>Tenney</u>, 207 F.2d at 452.  Accordingly, the "engaged in commerce" exemption applies and the FAA does not govern this dispute.

  Finally, defendants contend that even if plaintiff is not covered by the FAA "her agreement to arbitrate employment disputes with [defendant] remains subject to mandatory arbitration because the agreement is enforceable under state law."  Although the FAA contains no express preemptive provision and its preemptive effect is limited, its preemptive effect does encompass questions of arbitrability. <u>Great Western Mortgage Corp.</u>, 110 F.3d at 230; <u>see</u> <u>also</u> <u>Bradley v. Harris Research, Inc.</u>, 275 F.3d 884, 888-89 (9th Cir. 2001)(state law "may

nonetheless be pre-empted to the extent that it actually conflicts with federal law -- that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'")(quoting <u>Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Standford Jr. Univ.</u>, 489 U.S. 468, 474 (1989)(quoting <u>Hines v. Davidowitz</u>, 312 U.S. 52, 67 (1941)).

     Congress explicitly exempted a class of workers, those "engaged in interstate commerce," from a federal law otherwise favoring arbitration.  Exempting the plaintiff from arbitration under the FAA, but then requiring that she arbitrate her federal claims in accordance with state laws favoring arbitration would directly conflict with Congress's express purpose.  Accordingly, plaintiff's claims will be allowed to proceed in this court. An appropriate Order follows.